UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,                )
PATRICIA SANCO,                          )
                                         )
                    Plaintiff,           )
                                         )      No. 09-cv-03701
          v.                             )
                                         )      Magistrate Judge Schenkier
MICHAEL J. ASTRUE, Commissioner of       )
Social Security,                         )
                                         )
                    Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Patricia Sanco, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). On September 23, 2010, this Court reversed and remanded the decision of the Administrative Law Judge ("ALJ"). *Sanco v. Astrue*, 09 C 3701, 2010 WL 3824105 (N.D. Ill. Sept. 23, 2010). Ms. Sanco subsequently filed a motion seeking reimbursement of her attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (doc. # 34). Plaintiff seeks a total award of $7,931.30, for work done in connection with review of the final decision and for work done in seeking fees (*see* doc. # 34, Ex. C; doc. # 41; Pl.'s EAJA Reply at 14). For the reasons set forth below, this Court grants Ms. Sanco's motion and awards attorney's fees and costs in the reduced amount of $7,500.05.

## I.

Under EAJA, a party who prevails against the United States in a civil action is entitled to an award of reasonable attorney's fees. 28 U.S.C. § 2412(d). A plaintiff is eligible for attorney's fees

where (1) the plaintiff makes a timely application for fees; (2) the plaintiff is a "prevailing party"; (3) the government's position was not "substantially justified"; and (4) no special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1) (A)-(B); *see also Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). There is no dispute that plaintiff's application for fees is timely and that she is a prevailing party (doc. #39: Def.'s Resp. at 2-3). When a court reverses and remands an ALJ decision denying benefits to a claimant, the claimant is the prevailing party. *See Shalala v. Schaefer*, 509 U.S. 292, 300-01 (1993). Nor are there any special circumstances that would make an award unjust.

Rather, the parties' disagreement in this case centers on whether the Commissioner's pre-litigation position was "substantially justified." Ms. Sanco alleges that the government's position was not substantially justified, because the ALJ's reasoning for denying benefits was patently flawed and the ALJ clearly misapplied the law. The Commissioner, by contrast, opposes the EAJA motion on the grounds that the government's position was substantially justified. For the reasons that follow, we conclude that Ms. Sanco has the better of the argument.

## A.

Under EAJA, a court may award fees if either the Commissioner's litigation position or pre-litigation conduct are not substantially justified. *Stewart*, 561 F.3d at 683; *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006). The test for determining if the Commissioner's position was substantially justified is whether the agency had "a rational ground for thinking it had a rational ground for its action." *Burton v. Barnhart*, 43 F. App'x. 991, 994 (7th Cir. 2002) (quoting *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994)). The Court must make a single determination for the whole action, "treating a case as an inclusive whole, rather than as atomized line-items." *Comm'r,*

*I.N.S, v. Jean*, 496 U.S. 154, 161-62 (1990); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). In other words, the Court must make a global assessment of the Commissioner's conduct rather than "engage in 'argument counting.'" *Stewart*, 561 F.3d at 683; *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1081 (7th Cir. 2000).

The burden is on the Commissioner to prove that the ALJ's opinion was substantially justified even though it was reversed and remanded. *Golembiewski*, 382 F.3d at 724. The Commissioner's position is substantially justified where the Commissioner can show that the ALJ's opinion had "reasonable factual and legal bases, and there . . . [is] a reasonable connection between the facts and her legal theory." *Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006).

The substantial justification standard is different from the "substantial evidence" standard that district courts use to evaluate an ALJ's decision on the merits of a disability claim. *Hallmark*, 200 F.3d at 1080. Accordingly, a finding that a case should be remanded because substantial evidence did not support the Commissioner's position is not conclusive evidence that fees should be awarded. *Id.* at 1079-80. However, where the ALJ mischaracterized medical evidence or completely ignored substantial evidence, an award of fees may be appropriate. *Golembiewski*, 382 F.3d at 724-25. In addition, strong language pointing out errors by the ALJ on the merits, such as the court's "admonishing the ALJ" and "urging the Commissioner to assign the matter to a different ALJ" constitutes evidence in support of an award of fees. *Id.*

In this case, the ALJ determined that Ms. Sanco had the severe impairments of asthma and degenerative disc disease, but nonetheless had the residual functional capacity ("RFC") to complete a full range of medium work. The ALJ further determined that Ms. Sanco could perform her past relevant work. In reversing and remanding the ALJ's decision, this Court explained that the ALJ

3

erred by (1) failing to call a medical expert at the administrative hearing to help determine the proper "onset date" of Ms. Sanco's impairments where there was little or no medical evidence in the record on that question; (2) failing to explain the basis for the RFC finding, which was contrary to SSR 96-8p and controlling case law; and (3) failing to consider all factors required by SSR 96-7p in assessing the credibility of the claimant's testimony related to her alleged impairments. *Sanco*, 2010 WL 3824105, at *1 (N.D. Ill. Sept. 23, 2010).

In so holding, this Court used strong, unambiguous language expressing the errors in the ALJ's opinion, evidencing our position that the ALJ's errors were blatant. *Golembiewski*, 382 F.3d at 724-25. This Court criticized the ALJ's opinion for lacking explanation for the determination at Step 2 that Ms. Sanco had severe impairments in the first place. This Court stated that the ALJ found "without discussion that Ms. Sanco's asthma and degenerative disc disease were severe impairments as of June 30, 2001," despite the fact that a consultative examination found that Ms. Sanco had "no significantly limiting condition . . . present on or before [June 30, 2001]." *Sanco*, 2010 WL 3824105, at *11. We explained that no doctors noted any limitation that she had from her alleged onset date until the date she was last insured, and the ALJ did not cite any medical evidence to support her conclusions. *Id.* Indeed, the ALJ herself determined that contemporaneous medical records do not support Ms. Sanco's allegations. *Id.*

Moreover, in discussing the RFC, we stated that there was a "dearth of evidence or explanation to support" the ALJ's RFC finding, and that the ALJ's "conclusory statement does not even begin to build the necessary 'logical bridge' between the record evidence (or lack of it) and the finding." *Sanco*, 2010 WL 3824105, at *10. In addition, the Court stated that rather than creating a logical bridge to explain her findings, the ALJ instead made a "leap of logic from the evidence that

4

she recited, to a finding that does not clearly emanate from that evidence." *Id.* at *11. We further

stated that:

> We do not know what evidence the ALJ relied upon in determining what limitations
> Ms. Sanco experienced as of June 30, 2001. For example, we do not know whether
> – or to what extent – the ALJ inferred a level of limitation as of June 30, 2001 based
> on Ms. Sanco's condition in February 2007. If the ALJ did so, the record is bereft
> of any explanation to show that this kind of inference can be made from the record
> evidence and, if it can, how to do so. Nor do we know what specific medical
> evidence or what testimony of Ms. Sanco the ALJ relied upon in reaching the RFC
> determination. This failure to provide the explanation necessary for meaningful
> review requires a remand.

*Id.* at *10.

In the face of these statements, we cannot accept the Commissioner's argument that his

"position in the instant litigation easily met the test for being reasonable and rational" (doc. # 39:

Def.'s Resp. at 3). The Commissioner's argument is, at bottom, that the ALJ could have found

against Ms. Sanco at Step 2 because no doctor opined that she had severe impairments prior to her

last insured date, and so should not be criticized for making "errors that were entirely in Plaintiff's

favor" (*Id.* at 4). We cannot agree. The solicitousness the Commissioner now ascribes to the ALJ

at Step 2 does not excuse the ALJ's patent error not only at that step, but in the RFC and credibility

determinations.

Therefore, through a global analysis of the ALJ's opinion and this Court's remand of the

decision, we find that the Commissioner has not satisfied his burden of proving that both the

government's pre-litigation and litigation positions were substantially justified. The Commissioner

did not have "a rational ground for thinking [he] had a rational ground" for arguing that the ALJ's

errors were harmless and substantially justified. *Burton*, 43 F. App'x. at 994 (citing *Kolman*, 39 F.3d

at 177).

## II.

The Commissioner argues that even if this Court finds in Ms. Sanco's favor and determines that the Commissioner's position was not substantially justified, we should reduce Ms. Sanco's requested fees. The Commissioner contends that Ms. Sanco's fee request should be reduced because it includes: (1) time for non-compensable work; (2) impermissibly vague entries; and (3) excessive time spent on matters.

EAJA provides that any attorney's fees awarded must be reasonable. 42 U.S.C. § 2412(d)(2)(a). In evaluating requests for fees, the district court is required to do more than "eyeball the request and if it seems excessive cut it down by an arbitrary percentage." *Jablonski v. Astrue*, 2011 WL 824601, *2 (N.D. Ill. Mar. 3, 2011) (citing *Heiar v. Crawford County*, 746 F.2d 1190, 1204 (7th Cir. 1984)). The plaintiff has the burden of proving that the fees requested are reasonable, and the amount of fees awarded to the plaintiff is left to the discretion of the district court. *Hensley v. Eckerhart*, 461 U.S. 424, 432-33, 37 (1983); *see also Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991) (noting that district courts are best-suited to assess a reasonable fee because of their familiarity with the case's history).

### A.

The Commissioner does not challenge the hourly rates listed in plaintiff's itemization of fees. Nevertheless, this Court analyzes the method that plaintiff's attorneys utilized to calculate their fees and rates to ensure that it is reasonable. Plaintiff's attorneys billed a total of 40.3 hours at the rate of $172.50 per hour, and a total of 1.0 hours of work for the legal assistants' time, at the rate of $85.00 per hour. Ms. Sanco's attorneys properly began the calculations of their hourly rate at $125.00 per hour, the statutory amount, as established in the 1996 EAJA amendment. 28 U.S.C. §

2412(d)(2)(A). Then, they adjusted that amount to account for the changes in the cost of living as of October 2009, in accordance with the Bureau of Labor Statistics Consumer Price Index ("CPI"). *Id.* ("attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee"). Other courts in this district have recently approved the $172.50 hourly attorney rate and $85.00 hourly legal assistant rate. *See, e.g., Richards v. Astrue*, 08 C 972, 2011 WL 686297 (N.D. Ill. Feb. 16, 2011) ("Although $172.50 is above the statutory limit of $125, the Court allows the cost of living increase supplied by the Plaintiff. . . . Considering the cost of living increase, an attorney rate of $172.50 per hour is reasonable"). We, too, find that hourly rates were reasonable and properly calculated under EAJA.

**B.**

We now turn to the Commissioner's claim that Ms. Sanco's fee request must be reduced. We agree with some, but not all, of the Commissioner's arguments.

*First*, the Commissioner argues that plaintiff's fee request includes 1.7 hours of attorney time spent on noncompensable work, including unknown amounts of time spent: faxing forms and fee agreements; speaking with a non-party; performing clerical tasks, including receiving a fax and having a discussion with an unknown person concerning filing a timely complaint; performing secretarial tasks, including delivering a document, leaving a voicemail requesting that the opposing counsel return the call, and documenting court dates in a calendar (doc. #41: Def.'s Suppl. Resp. at 3-4). "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). We agree that two of the tasks itemized are noncompensable work. In turn, we reduce the requested hours required by 0.1 hours for the fax received on June 16, 2009 and 0.1 hours for the delivery of a document to

7

someone's inbox. *Jablonski v. Astrue*, 2011 WL 824601, at *3 (N.D. Ill. Mar. 3, 2011). We find that the other tasks are compensable.

*Second*, the Commissioner contends that plaintiff's counsel cannot receive payment for "time spent obtaining an extension that was entirely for counsel's convenience" (doc. #41: Def.'s Suppl. Resp. at 4). While we agree that time for extensions sought merely for counsel's convenience is noncompensable, we disagree that such a rule applies in this situation. *See Jablonski*, 2011 WL 824601, at *3. The Commissioner filed two motions for extensions of time, after which plaintiff was required to file a motion for extension of time as her counsel was out of town on the newly assigned date (doc. #42: Pl.'s Reply at 11). It well may be that plaintiff's counsel would not have required the extension of time for himself if the Commissioner's attorneys had not sought and obtained two extensions of time for themselves, and filed the Commissioner's brief on one of the two dates originally set. What's more, we find it ironic that the Commissioner objects to the small amount of time plaintiff's counsel logged in seeking his own extension of time, but not to the comparable amount of time that plaintiff's counsel logged in dealing with the Commissioner's counsel when the defendant twice sought extensions of time. We reject defendant's challenge to this time entry.

*Third*, the Commissioner argues that plaintiff's fees should be reduced by a total 1.1 hours because two time entries were impermissibly vague and lumped multiple tasks together, making it difficult to discern how much time was required to complete each task (doc. #41: Def.'s Suppl. Resp. at 4-6). On June 12, 2009, plaintiff's counsel itemized the following tasks: "[c]all client and go over Pauper's Petition info and court procedures, etc. She wants to proceed. Ella Sanco called. Faxed Pauper's form and fee agreement to Ella" (doc. # 34: Pl.'s Mem., at Exhibit C). Likewise, on June 16, 2009, plaintiff's counsel grouped the following tasks together: "[r]eceived signed fax back

today. Review. Meeting with JMG about getting court complaint filed on time. Client called to verify we received documents and with final procedural questions" (*Id.*).

Plaintiff's itemizations were reasonable for the tasks listed. It is often difficult to determine exactly how much time each attorney spends or should spend on each element of the process, as such times will vary based on the complexity of the issues. *Banks v. Barnhart*, 01C382, 2003 WL 22019796, *5 (N.D. Ill. Aug. 26 2003) (citing *Lightfoot v. Walker*, 826 F.2d 516, 522 (7th Cir. 1987)). Here, plaintiff's counsel provided enough detail to enable the Court to determine the reasonableness of the requests. The itemizations properly "identified the general subject matter of his time expenditures." *Jablonski*, 2003 WL 22019746, at *3 n.1 (citing *Hensley*, 461 U.S. at 437 n.12). The entries were "sufficiently clear to enable the district court to identify what hours, if any, are excludable because they are excessive, redundant, or otherwise unnecessary." *Id.* (citing *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 n.5 (7th Cir. 1986)).

*Fourth*, the Commissioner contends that certain entries claim excessive amounts of time. The Commissioner cites the following entries as excessive: 0.2 hours for reviewing the Court's minute entry (which should be reduced by 0.1 hours), 0.3 hours for reviewing the Court's grant of the Commissioner's extension and completing "previous" tasks (which should be reduced by 0.2 hours) (doc. #41: Def.'s Suppl. Resp. at 6-8). We agree with the Commissioner that given that both documents reviewed were half a page long, the time allotted was excessive. *Hensley*, 461 U.S. at 434 ("The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended'" (citation omitted)); *Edwards v. Nat'l Bus. Factors, Inc.*, 897 F. Supp. 458, 460-61 (D. Nev. 1995) ("no attorney reasonably needed fifteen minutes to review . . . [a] one-page order."); *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) ("In determining how many

hours were reasonable, the court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case") (citation omitted). We therefore reduce those two entries by a total of 0.3 hours.

The Commissioner also requests a reduction of 6.0 hours from the 9.0 hours that plaintiff listed as time spent on plaintiff's reply brief since the work was duplicative of plaintiff's original brief (doc. # 41: Def.'s Suppl. Resp. at 7). While we agree that 9.0 hours was excessive, we find that 7.0 hours is reasonable in light of the various arguments and authorities raised in the Commissioner's reply brief. *See Webb v. Bowen*, 84 C 1113, 1987 WL 18935 (N.D. Ill. Oct. 21, 1987).

Finally, the Commissioner argues that the 1.0 hour sought for the legal assistant to prepare the EAJA time itemization was excessive (doc. #41: Def.'s Suppl. Resp. at 7-8). We disagree with that assessment. We conclude that 1.0 hour is reasonable for the tasks of printing the billing record, summarizing the records, and calculating the fees requested.

*Fifth*, the Commissioner takes issue with the $14.80 in costs plaintiff seeks to recover for making three copies of plaintiff's brief and reply brief, two copies of a court order, and one copy of defendant's brief. The Commissioner argues that plaintiff did not adequately justify these "copying" and "printing" fees and did not provide evidence of the actual costs incurred (doc. #41: Def.'s Suppl. Resp. at 8-9). We disagree. Plaintiff met her burden of showing that the documents produced were necessary for the case. *Hensley*, 461 U.S. at 434 ("counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. . . . Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority") (citation omitted). Plaintiff also listed that the 148

10

pages of copies were $0.10 per page, which is the approved rate according to this Circuit. U.S. Ct. of App. 7th Cir. Rule 39; *Tchemkou v. Mukasey*, 517 F.3d 506, 513 (7th Cir. 2008); *Jablonski*, 2011 WL 824601, at *4 (finding that the $0.10 per page fee was reasonable and compensable even without a receipt).

For the reasons listed above, we believe that Ms. Sanco met her burden of proving that the fees requested were generally reasonable. We only reduce the requested amount by 2.5 hours of attorney time, for a total reduction of $431.25.

## CONCLUSION

For the reasons stated above, pursuant to the EAJA, the Court grants Ms. Sanco's motion for attorney's fees (doc. # 34), but in the reduced amount of $7,500.05 ($7,931.30-$431.25).

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: April 19, 2011**